Filed 11/25/13  Golden Hill Neighborhood Assn. v. City of San Diego CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| GOLDEN HILL NEIGHBORHOOD ASSOCIATION, INC., et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> CITY OF SAN DIEGO, <br><br> Defendant and Respondent. | D062203 <br><br><br> (Super. Ct. Nos. 37-2007-00074201-CU-WM-CTL, 37-2008-00088429-CU-MC-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Richard S. Whitney, Judge.  Reversed and remanded.

Law Offices of Charles R. Khoury Jr. and Charles R. Khoury, Jr.; Haskins & Associates and Steven W. Haskins, for Plaintiffs and Appellants.

Jan I. Goldsmith, City Attorney, Carmen A. Brock, Deputy City Attorney for Defendant and Respondent.

The Golden Hill Neighborhood Association and property owner John McNab (collectively Association) prevailed in a prior appeal in which this court ordered the trial court to vacate the judgment and issue a new judgment granting the Association's

requested relief against the City of San Diego (City).  (*Golden Hill Neighborhood Assn., Inc. v. City of San Diego* (2011) 199 Cal.App.4th 416 (*Golden Hill*).)  After the remittitur was issued and the trial court entered the new judgment, the Association sought attorney fees under the private attorney general doctrine.  (Code of Civ. Proc., § 1021.5 (§ 1021.5).)  The trial court denied the motion, finding it was untimely under California Rules of Court, rule 3.1702(c)(1).[1]

We determine the trial court erred in ruling that the Association's attorney fees motion was governed by rule 3.1702(c)(1).  Under settled law, rule 3.1702(b)(1) is the applicable rule and the Association's motion was timely under this rule.  We reject the City's alternate contention that the Association waived its right to seek attorney fees by failing to seek the fees after the initial trial or during the prior appeal.  We reverse and remand for the court to consider the Association's attorney fees motion on its merits.

FACTUAL AND PROCEDURAL SUMMARY

In 2007, the Association sued the City challenging the legality of a City resolution establishing a Golden Hill maintenance district (District) and challenging the City's initial 2007 assessments to fund services in the maintenance district.  (*Golden Hill, supra*, 199 Cal.App.4th at pp. 426-428.)  In its complaint and petition for writ of mandate, the Association claimed the City's formation of the District and the 2007 assessments violated article XIII D of the California Constitution (article XIIID), which limits a local

---

[1]     All further rule references are to the California Rules of Court.

2

government's ability to levy special assessments against real property. (*Golden Hill, supra*, at pp. 426-428.)

The next year the Association filed a second lawsuit against the City challenging the District's 2008 tax assessments. (*Golden Hill, supra*, 199 Cal.App.4th at p. 428.) The lawsuits were consolidated. (*Id*. at p. 421.)

After a bench trial on the consolidated action, the trial court issued a judgment favoring the Association in part and the City in part, but the judgment was not entirely clear as to the grounds for the decision or the scope of the relief provided on the Association's claims. (*Golden Hill, supra*, 199 Cal.App.4th at p. 428.) No party sought attorney fees.

All parties appealed, and on September 22, 2011 this court issued a lengthy published opinion holding that the City's resolution establishing the District was unconstitutional. (*Golden Hill, supra*, 199 Cal.App.4th 416.) In the Disposition section, we ordered the trial court to: (1) vacate its judgment; and (2) enter a new judgment (i) granting the Association's petition for writ of mandate filed in the 2007 lawsuit and (ii) ordering the issuance of a writ vacating the City's resolution forming the District and invalidating all of the District's assessments. (*Id*. at p. 440.) This was an unqualified "win" for the Association.

The remittitur was issued on November 22, 2011. Less than one month later, the Association filed a proposed amended judgment with the relief ordered by the *Golden Hill* court. The proposed judgment included a space for costs and attorney fees to be

3

awarded. Shortly after, the City filed an opposition to the proposed judgment, raising various issues with the judgment and asserting that the Association was not entitled to any attorney fees because it did not seek the fees after the first trial or in their appellate briefs filed in the first appeal.

On January 9, 2012, the Association filed a response to the City's objections, and also requested a hearing date on the costs and attorney fees issues. The Association argued it was entitled to raise the issue of attorney fees under section 1021.5 and had not waived the issue.

On January 20, 2012, the Association filed a motion seeking a hearing on the proposed new judgment and requesting attorney fees incurred in the action. In its supporting memorandum, the Association set forth legal and factual grounds for its entitlement to attorney fees under the private attorney general doctrine.

On February 9, 2012, the court signed the new judgment that had been proposed by the Association. The judgment states:

> "1. The previous judgments in each of the consolidated cases are VACATED;
>
> "2. The Petition for WRIT of MANDATE filed by Association in 2007 is GRANTED;
>
> "3. The City's Resolution No. R-302887 forming the Maintenance Assessment District of Golden Hill is vacated;
>
> "4. The assessments imposed by that Maintenance Assessment District are invalidated;
>
> "5. A Writ shall issue to carry out the above orders."

In the final line, the judgment states the issue of costs and fees will be decided by "filed motions."

About one month later, on March 21, the Association filed a formal motion for attorney fees under section 1021.5, supported by extensive documentation regarding the nature of the attorney services and the amount of the claimed fees. On April 2, the City filed an opposition to the attorney fees motion. The sole basis of its opposition was that the court had no jurisdiction to consider the fees because the Association had not requested the fees after the first trial or as part of the prior appeal. In reply, the Association denied it had waived its rights, asserting that it was not until the Court of Appeal issued the *Golden Hill* decision that it had succeeded in obtaining the primary benefit sought—a writ invalidating the resolution forming the District and invalidating all (including the post-2007) assessments.

After a hearing, the trial court denied the Association's attorney fees motion on a different ground than had been briefed by the parties. On its own motion, the court concluded the Association's motion was not timely because it was governed by rule 3.1702(c)(1), which requires an attorney fees motion to be filed within 40 days after a remittitur is issued. The court stated the Association "did not file [its] motion for attorneys' fees until March 21, 2012, beyond the 40-day limit."

Within several weeks, the Association moved for a new trial, requesting the court to reconsider its ruling because it was legally incorrect. The Association explained that

5

rule 3.1702(b)(1), rather than rule 3.1702(c)(1), governs the timeliness issue, citing several supporting authorities, including *Yuba Cypress Housing Partners, LTD v. Area Developers* (2002) 98 Cal.App.4th 1077 (*Yuba*). The Association argued that under rule 3.1702(b)(1), the Association's attorney fees motion was required to be filed within 60 days of the new judgment, and the Association filed its motion within this 60-day period. The Association alternatively argued that it substantially complied with the rule because it put the City on notice of its intent to seek attorney fees within several weeks of the remittitur and before the new judgment was even filed.

The court denied the new trial motion.

## DISCUSSION

### I. *Timeliness of Motion Under the California Rules of Court*

The Association contends the court erred in concluding rule 3.1702(c)(1) applied instead of rule 3.1702(b)(1).

### A. *Review Principles*

The Association's contention requires that we interpret the Rules of Court. In doing so, we apply well-settled statutory interpretation principles. (*The Termo Co. v. Luther* (2008) 169 Cal.App.4th 394, 403 [traditional statutory construction principles applicable to interpretation of California Rules of Court].) In this analysis, we focus on the language used in the applicable rules. (*Centex Homes v. Superior Court* (2013) 214 Cal.App.4th 1090, 1099.) If the words are not ambiguous, " 'the plain meaning of the language governs.' " (*Taxpayers for Accountable School Bond Spending v. San Diego*

6

*Unified School District* (2013) 215 Cal.App.4th 1013, 1025.) We presume the Legislature meant what it said, and the statute's plain meaning governs. (*Centex Homes, supra*, at p. 1099.)

We apply a de novo review standard in considering whether the trial court properly interpreted the Rules of Court. (*In re M.C.* (2011) 199 Cal.App.4th 784, 804-805.)

## B. *Analysis*

Rule 3.1702 sets forth deadlines for attorney fees motions after trial or after an appeal. The rule contains two separate deadlines: one applicable to fees incurred at trial or on appeal (rule 3.1702(b)); and one applicable only to fees incurred on appeal (rule 3.1702(c)).

The **first** deadline, contained in rule 3.1702**(b)(1)** states in relevant part:

"(b) *Attorney's fees before trial court judgment*

"(1) Time for motion

"A notice of motion to claim attorney's fees for services up to and including the rendition of judgment in the trial court—*including attorney's fees on an appeal before the rendition of judgment in the trial court*—must be served and filed within the time for filing a notice of appeal under rules 8.104 and 8.108 in an unlimited civil case or under rules 8.822 and 8.823 in a limited civil case." (Italics added.)

Under this rule, the Association had 60 days from the time the new judgment was filed to file its motion. It is undisputed the Association met this deadline.

The **second** deadline, contained in rule 3.1702**(c)(1)** states in relevant part:

7

"(c) *Attorney's fees on appeal*

"(1) Time for motion

"A notice of motion to claim attorney's fees on appeal—*other than the attorney's fees on appeal claimed under (b)*—under a statute or contract requiring the court to determine entitlement to the fees, the amount of the fees, or both, must be served and filed within the time for serving and filing the memorandum of costs under rule 8.278(c)(1) in an unlimited civil case or under rule 8.891(c)(1) in a limited civil case." (Italics added.)

If this rule applies, the Association had 40 days from the time the remittitur was issued to file its motion. (Rule 8.278(c)(1).) It is undisputed the Association did not meet this deadline.

The trial court's conclusion that rule 3.1702(c)(1) applied to the Association's motion is not supported by the plain language of this rule. First, rule 3.1702(c)(1) expressly applies only to motions seeking attorneys fees "on appeal." Here, the Association was seeking fees incurred *at trial* as well as on appeal. Second, rule 3.1702(c)(1) applies only to attorney fee requests "*other than the attorney's fees on appeal claimed under (b)*." (Italics added.) Rule 3.1702*(b)* applies to attorney fees for services "up to and including the rendition of judgment in the trial court—including attorney fees on an appeal before the rendition of judgment in the trial court." (Rule 3.1702(b)(1).) When the Association filed its attorney fees motion in March 2012, it sought fees incurred during trial and on appeal, all of which were incurred before the existing February 9, 2012 judgment. Because the Association sought fees for services

8

during trial and appeal and these fees were incurred before the February 9, 2012 judgment, rule 3.1702(b)(1) applies.

More than 10 years ago, a Court of Appeal reached the same conclusion under similar facts. (*Yuba, supra*, 98 Cal.App.4th 1077.) The *Yuba* plaintiff was unsuccessful at trial but prevailed on appeal and the appellate court remanded the case with orders for the trial court to enter a new judgment in the plaintiff's favor. (*Id*. at pp. 1080, 1087.) On remand, the plaintiff moved for attorney fees, but the trial court found the portion of the motion seeking appellate attorney fees was untimely under former rule 870.2(c)(1), the predecessor rule to rule 3.1702(c)(1).[2] (*Yuba*, at p. 1084.) On appeal, the *Yuba* court held the trial court erred in concluding subsection (c) contained the governing rule. (*Yuba*, at pp. 1084-1086.) The court reasoned that subsection (c) excludes fee motions falling under subsection (b), and the subsection (b) language encompasses attorney fees on appeal " 'before the rendition of judgment,' " which necessarily refers to appellate attorney fees sought after "the appellate court reverse[d] a judgment following trial and direct[ed] the entry of a *new judgment*." (*Id*. at p. 1085, italics added.) "In contrast, [subdivision (c) applies where] appellate attorney fees are incurred after rendition of [the trial court] judgment when the appellate court simply affirms the judgment without remanding the matter for further proceedings entailing the entry of a new judgment." (*Ibid.*)

---

2      The two rules are essentially identical with respect to the issues raised here.

9

Accordingly, when a party moves for attorney fees after an appeal, the time deadlines depend on whether the appellate disposition was a simple affirmance of an existing judgment (in which case rule 3.1702(c)(1) applies) or whether the disposition was a reversal and/or a reversal with directions to enter a new judgment (in which case rule 3.1702(b)(1) applies). (*Yuba, supra*, 98 Cal.App.4th at pp. 1084-1086.) This interpretation has been endorsed by the commentators. (See Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2013) ¶¶ 14:122.11, 14:122.5 ["The subdivision (b)(1) timing rule for claiming fees incurred on an interim appeal applies (not the subdivision (c)(1) deadline) when the appellate court *reverses and remands* for further proceedings entailing the entry of a new judgment"]; 2 Pearl, Cal. Attorney Fee Awards (Cont.Ed.Bar 3d ed. 2013) §§ 11.43, 12.21.)

Applying these principles here, the Association's motion was timely. As in *Yuba*, this court reversed a judgment and directed the entry of a new judgment. (*Golden Hill, supra*, 199 Cal.App.4th at p. 440.) After the remittitur was issued, the trial court entered a new judgment consistent with the opinions expressed in the *Golden Hill* opinion. Thereafter, the Association moved for attorney fees that were incurred before the new judgment. At that point, the prior judgment was no longer in existence and had no effect. (See *Saller v. Crown Cork & Seal Co., Inc.* (2010) 187 Cal.App.4th 1220, 1237-1238 ["effect of an unqualified reversal is to vacate the judgment . . . as if . . . no judgment had been entered"].) Accordingly, by definition, the fees sought by the Association were fees "for services up to and including the rendition of [the only existing] judgment in the trial

court—including attorney's fees on an appeal before the rendition of judgment in the trial court." (Rule 3.1702(b)(1).) Thus, rule 3.1702(b) applied.

The City argues *Yuba* is inapplicable because in that case the plaintiffs "lost" in the trial court whereas in this case each party prevailed in part. However, with respect to the rule 3.1702 issue, this difference is not material. The critical point is that the rule 3.1702(b)(1) deadline applies when the party is seeking appellate fees incurred before the "new" judgment. In *Yuba*, as here, the court ordered the trial court to reverse the prior judgment and enter a new judgment in the plaintiff's favor. Under those circumstances, the plaintiff seeking prevailing party attorney fees for attorney services incurred before the new judgment is governed by the deadline set forth in rule 3.1702(b)(1). (See *Yuba, supra*, 98 Cal.App.4th at pp. 1084-1086.)

Similarly, the fact that *Yuba* involved an attorney fees motion under Civil Code section 1717, rather than under section 1021.5, is a distinction without a difference. Rule 3.1702 expressly applies to "statutory attorney's fees and claims for attorney's fees provided for in a contract." (Rule 3.1702(a).)

Finally, we disagree with the City's contention that the prior judgment was not "reversed." In the Disposition section, the *Golden Hill* court stated: "The trial court is directed to vacate the judgment and enter a new judgment granting the Association's petition for writ of mandate filed in 2007 and ordering the issuance of a writ vacating the city's resolution . . . forming the District and invalidating the assessments imposed by the

11

District." (*Golden Hill, supra*, 199 Cal.App.4th at p. 440.)  That disposition constitutes a reversal of the prior judgment.

## II. *Association Did Not Waive Right To Seek Attorney Fees*

The City alternatively urges this court to affirm the court's order on the ground that the Association did not file an attorney fees motion after the first trial and/or during the first appeal.  The City argues that by failing to previously move for attorney fees, the Association waived its right to seek the fees following this court's unqualified reversal of the judgment.  Although the trial court did not reach this issue, both parties briefed the issue in the proceedings below and in this appeal, and request that we decide the issue.  For purposes of judicial economy, we agree it is appropriate to address the issue on this appeal.

Under section 1021.5, " 'the court may award attorney fees to a "successful party" in any action that "has resulted in the enforcement of an important right affecting the public interest if:  (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any.". . .' " (*Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 565.)

The City contends that even assuming the Association could satisfy section 1021.5's statutory elements with respect to the results achieved from the *Golden Hill* decision, the Association is precluded from seeking the fees for services incurred to

12

obtain these results because the Association had already obtained this same successful outcome after the initial trial court judgment. Essentially, the City argues that there was no need for the first appeal because the Association had already obtained its primary requested relief after the trial, even if its attorneys did not recognize this.

This argument is unsupported. After the initial trial, the trial court entered a judgment in favor of the Association on its cause of action alleging that the City's special assessments were invalid because they were not imposed for "special benefits," as is required under article XIIID. (*Golden Hill*, *supra*, 199 Cal.App.4th at p. 429.) But the trial court found in the City's favor with respect to the Association's requests for declaratory and injunctive relief pertaining to future assessments and other requested relief. (*Id*. at p. 429.)

Our court stated that the "effect" of this judgment was "unclear" and "it is uncertain whether the trial court intended to invalidate the *formation* of the District or simply invalidate the 2007 assessments levied by the District as being unauthorized by article XIII D." (*Golden Hill, supra*, 199 Cal.App.4th at p. 428.) In a footnote, the *Golden Hill* court additionally observed that "[c]ase law is unclear as to whether a judicial determination invalidating an initial assessment imposed in a newly formed assessment district necessarily invalidates the *formation* of the assessment district established to levy the assessment." (*Id*. at p. 428, fn. 9.) In this same footnote, the court specifically rejected the City's argument that the judgment necessarily invalidated the formation of the District. (*Ibid*.) Later in the opinion, the *Golden Hill* court noted that

13

the judgment "appears to uphold the 2008 assessment," which would be inconsistent with a conclusion that the trial court intended to invalidate the District. (*Id*. at p. 429.)

After determining the trial court's judgment was unclear and uncertain, our court engaged in a lengthy analysis of the Association's and the City's appellate arguments regarding whether the City's formation of the District and the imposition of the assessments satisfied constitutional requirements. (*Golden Hill, supra*, 199 Cal.App.4th at pp. 429-439.) The court ultimately concluded the formation of the District violated the state Constitution (article XIIID) because there was insufficient evidence to support the assigned values of City-owned parcels within the District in determining whether there was a proper affirmative vote from the property owners. (*Golden Hill, supra*, 199 Cal.App.4th at pp. 429-435.) Our court also concluded that all assessments were improper and unconstitutional because the City did not separately quantify the general and special benefits to be provided by the assessments. (*Id*. at pp. 436-439.) Based on these conclusions, the *Golden Hill* court ordered the prior judgment "vacate[d]" and ordered the trial court to enter a new and different judgment and a writ of mandate vacating the City's resolution forming the District and invalidating the assessments imposed by the District. (*Id*. at p. 440.)

The Association asserts it did not seek section 1021.5 attorney fees after the initial trial because "the benefit of the lawsuit to the residents of Golden Hill was not at all clear until the ambiguities in the trial court's rulings were resolved by this Court of Appeal and the prior judgment vacated, a new judgment filed and a writ issued . . . pursuant to this

14

Court of Appeal's [decision]." The Association explains that it appealed the trial court judgment "because their partial victory did not gain them what they sought, the dissolution of the assessment district. That result was gained in the reversal and public opinion of *Golden Hill* . . . ."

The Association's position is supported by the *Golden Hill* decision. Based on the statements, conclusions, and disposition set forth in the *Golden Hill* opinion, the Association obtained new, qualitatively different, and substantially greater relief in the new judgment than was initially mandated by the original trial court judgment. Thus, the Association was entitled to seek private attorney general fees incurred for obtaining this relief in a timely motion filed for the first time after the new judgment was entered. To the extent the City believes that the Association did not need to file the appeal to achieve this result, or that its earlier partial victory was no different from its later appellate victory, those arguments can be presented to the trial court when the court determines whether the Association met its burden to show the statutory criteria for obtaining a section 1021.5 attorney fees award and/or when the court examines the reasonableness of the incurred fees during trial and on appeal.

DISPOSITION

Order reversed. The court is ordered to vacate its April 19 order finding plaintiffs' attorney fees motion untimely under rule 3.1702(c)(1). The court is ordered to consider the Association's attorney fees motion consistent with the conclusions reached in this opinion. The City is ordered to bear appellants' costs on appeal.

HALLER, J.

WE CONCUR:

BENKE, Acting P. J.

McDONALD, J.

16